ATTACHMENT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAWRENCE BELKIN, INDIVIDUALLY AND AS
NEXT OF KIN OF GAIL BELKIN,
   436 N. Braddock Street
   Winchester, VA 22601-3922,

                Plaintiff,
    v.

ISLAMIC REPUBLIC OF IRAN,
   c/o Ministry of Foreign Affairs
   Ebn e Sina Street
   Emam Khomeini Square
   Tehran, Iran,

IRANIAN MINISTRY OF INFORMATION
AND SECURITY,
   Pasdaran Avenue
   Golestan Yekom
   Tehran, Iran,

          and

ISLAMIC REVOLUTIONARY GUARD CORPS,
   Presidential Palace
   Pasdaran Avenue
   Tehran, Iran,

                Defendants.

Civil Action No. 06-0711 (PLF)

## FIRST AMENDED COMPLAINT

Plaintiff Lawrence Belkin, individually, next of kin of Gail Belkin, and as the prospective legal representative of the estate of Gail Belkin, hereby sues the Islamic Republic of Iran, the Ministry of Information and Security of Iran, and the Islamic Revolutionary Guard Corps of Iran (collectively "Defendants"). In support of his causes of action, Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1.    Jurisdiction over the subject matter of this case arises under 28 U.S.C. §§ 1330(a), 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. The Defendants are subject to suit in the courts of the United States pursuant to the Foreign Sovereign Immunities Act, as amended,

28 U.S.C. § 1605A(a)(2), and related statutes. This action arises under the laws of the United States of America, customary international law, the common and statutory laws of the District of Columbia, and the common law of the State of Israel ("Israel").

2. Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(f)(4).

3. This is an action brought by Plaintiff stemming from the March 4, 1996 murder of his wife, Gail Belkin, in a suicide bombing at the Dizengoff Center Shopping Mall in Tel Aviv, Israel by members of the Palestine Islamic Jihad, Shiqaqi Faction (hereinafter referred to as the "PIJ"). The PIJ was trained, sponsored and materially assisted by Defendants Islamic Republic of Iran ("Iran"), the Ministry of Information and Security of Iran ("MOIS"), and the Islamic Revolutionary Guard Corps ("IRGC").

4. Lawrence Belkin is a citizen of the United States, born in Pittsburgh, Pennsylvania. He has been a resident of the State of Virginia since 2001. In March 1996, he was residing in Israel.

5. Gail Belkin, the Decedent, was married to Lawrence Belkin at the time of her death on March 4, 1996. She was 48 years of age at the time. She was a citizen and a resident of Israel.

6. Gail Belkin had two adult daughters from a prior marriage. The daughters are citizens and residents of Israel.

7. In addition to bringing this action on his own behalf, Lawrence Belkin brings this action as the next of kin of Gail Belkin and as the soon-to-be-appointed personal representative of the estate of Gail Belkin. Such appointment is expected shortly in Israel.

8. Defendant Iran is a foreign state which has been designated as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979, 50 U.S.C. App. § 2405(j), and Section 620A of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371 since January 19, 1984. Iran routinely provides material support and resources to terrorist

organizations operating in the Middle East including the Shiqaqi Faction of the PIJ. At all times relevant, Iran sponsored the PIJ within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note, by providing each of them with funding, direction, training and other assistance for its terrorist activities in Israel as well as in other parts of the Middle East which were undertaken to promote Islamic fundamentalism.

9. Defendant MOIS operates, *inter alia*, as an intelligence service and a conduit for terrorism and functions both within and beyond Iran's territory. MOIS is an "agency or instrumentality" of Iran. At all times relevant to this action, the PIJ acted as an agent of Defendants Iran, MOIS, and the IRGC, respectively. At all times relevant to this action, MOIS acted as an agent of Iran and performed certain acts within the scope of its agency within the meaning of 28 U.S.C. § 1605(a)(7). Specifically, MOIS acted as a conduit for Iran's provision of funds, training and direction to PIJ for its terrorist activities in Israel including the actions relating to the March 4, 1996 terrorist bombing at the Dizengoff Center in Tel Aviv.

10. Defendant IRGC is an Iranian revolutionary organization which at all times relevant to this action was active in supporting, furthering, advancing, and materially assisting the terrorist agenda and objectives of Defendant Iran in Israel through its proxy, the PIJ. At all times relevant to this action, Defendant IRGC acted as an agent of Iran in providing training and assistance to the PIJ.

11. The PIJ was at all times relevant an international terrorist organization with cells located throughout the world. It acted under the direction of Iran and with Iran's material support. The PIJ was an agent of Iran.

## BACKGROUND FACTS

12. At all times relevant, Israel was an independent sovereignty located on the eastern shore of the Mediterranean Sea.

13. Fathi Shiqaqi was born in 1951 in Gaza. He was trained as a medical doctor in Egypt. In the early 1980s, he, together with Sheikh Odeh, founded the PIJ movement.[1] The PIJ's manifesto rejected any peaceful solution to the Palestinian cause. The avowed purpose of the PIJ was to destroy Israel and end all Western influence of the "Great Satan-America" in the Middle East. The Secretary-General of the PIJ was Fathi Shiqaqi until October 26, 1995, when he was assassinated in Malta.

14. In August 1988, Israel expelled Fathi Shiqaqi to Lebanon along with other PIJ members. While in Lebanon, Fathi Shiqaqi and the PIJ developed close contacts with MOIS and the IRGC units stationed in the Bakaa Valley of Lebanon and with Hizbollah, an Iranian-sponsored and funded terrorist organization operating primarily in Lebanon. Through these contacts, Fathi Shiqaqi strengthened his ties to Iran and its Islamic militancy.

15. At various times, the PIJ worked and associated with other Iranian-supported terrorist organizations including, among others, Hamas and Hizbollah, to accomplish acts of violence that they believed were mutually beneficial to their cause, particularly in Israel.

16. In January 1994, the PIJ held a meeting in Beirut, Lebanon, which was attended by representatives of Iran. An agreement was struck which reaffirmed Iran's role as the PIJ's "strategic partner." In 1994, Iran was providing substantial funding to the PIJ.

17. In January 1995, President Clinton issued Executive Order 12947, which prohibited financial transactions with terrorists and terrorist organizations which threatened to disrupt the Middle East peace process. The PIJ was identified as a terrorist organization, and Fathi Shaqaqi was listed as a "Specially Designated Terrorist." On October 8, 1997, pursuant to 18 U.S.C. § 2339B(a)(1), the Secretary of State designated the PIJ as a "Foreign Terrorist Organization." *See* 62 F.R. 52650.

---

[1] The PIJ was also called the Islamic Jihad Movement in Palestine.

18. In early 1995, Fathi Shaqaqi was in Iran. He announced that a meeting had gone well in Iran and that the money coming into the PIJ from Iran would increase shortly.

19. In March 1995, Fathi Shaqaqi conducted a media interview in which he discussed, *inter alia,* the formation and evolution of the PIJ, its relationship with Hizbollah, and Iran's substantial financial assistance. Fathi Shaqaqi advised that suicide bombing operations would continue.

20. On April 9, 1995, a PIJ suicide bomber detonated a bomb alongside of an Israeli bus. United States citizen Alisa Flatow, age 20, who was on the bus, was killed. *See Flatow v. Islamic Republic of Iran,* 999 F. Supp. 1 (D.D.C. 1998). Others on the bus were also either killed or injured. *See Ben Haim v. Islamic Republic of Iran,* Civil No. 02-1811, "Findings of Fact and Conclusions of Law" (D.D.C. Mar. 24, 2006) (Lamberth, J.). Iran was held responsible for these acts by the PIJ. *Id.*

21. On October 25, 1995, Fathi Shaqaqi was killed in Malta by unknown assailants. Ramadan Abdullah Shallah replaced Fathi Shaqaqi upon his death. Prior to taking this position, Shallah resided in Tampa, Florida, and was employed as an adjunct professor at the University of South Florida. Shallah is also listed as a "Specially Designated Terrorist."

22. On March 4, 1996, a PIJ suicide bomber detonated a forty-pound bomb comprised of TNT and nails in the Dizengoff Center Shopping Mall in Tel Aviv, Israel. Thirteen individuals, including Plaintiff Lawrence Belkin's wife, Gail, and his mother-in-law, were critically injured and died as a result of their injuries.

23. An individual who dies while committing an act of violence of behalf of the PIJ is described by them as a "martyr" for the PIJ.

24. On October 28, 1996, a PIJ leader in the presence of Iranian, Hamas and Hizbollah representatives, pledged to avenge Fathi Shaqaqi's death. This PIJ leader mentioned

past successful PIJ terrorist attacks including the bus attack in which Alisa Flatow died and the Dizengoff Center Shopping Center bombing in which Gail Belkin died.

25. At all times relevant to this action, Iran, through its agents MOIS and the IRGC, provided material resources and support in the form of funding, training and direction to PIJ. In addition, by providing said material resources and support, MOIS and the IRGC were acting within the scope of their agency on behalf of Defendant Iran.

26. The aforesaid willful, wrongful, intentional, outrageous, malicious, and reckless acts of PIJ members, whose acts were funded, directed, and otherwise materially supported by Iran, through its agents Defendants MOIS and the IRGC, are acts for which officials and agents of the United States Government would be liable if such acts were carried out within the United States.

## COUNT I
### (District of Columbia Cause of Action – Wrongful Death)
### 16 D.C. Code § 2701

27. The facts alleged in Paragraph 1 through 26 are incorporated by reference as if fully alleged herein.

28. The acts of the Defendants alleged herein proximately caused the wrongful death of Gail Belkin. The acts were intentionally carried out by the PIJ but funded and directed by the Islamic Republic of Iran through MOIS and the IRGC.

29. The Defendants would have been liable to Gail Belkin, had she lived, for the injuries they inflicted upon her.

30. As a direct and proximate result of the wrongful death of Gail Belkin, Plaintiff Lawrence Belkin, as the husband and next of kin of Gail Belkin, and other family members suffered damages including pecuniary loss, mental anguish, emotional pain and suffering, and the loss of society, companionship, comfort, education, protection, care, personal advice, counsel, services, and guidance.

31. As a direct and proximate result of the wrongful death of Gail Belkin, her husband and next of kin Lawrence Belkin and her family have suffered damages including, but not limited to, the loss of the Decedent's earnings and the loss of services which they might have received from Decedent.

## COUNT II
### (Federal Common Law – Wrongful Death)
### 28 U.S.C. § 1605A(c)

32. The facts alleged in Paragraph 1 through 31 are incorporated by reference as if fully alleged herein.

33. The acts of the Defendants alleged herein proximately caused the wrongful death of Gail Belkin. The acts were intentionally carried out by the PIJ but funded and directed by the Islamic Republic of Iran through MOIS and the IRGC. The Defendants would have been liable to Gail Belkin, had she lived, for the injuries they inflicted upon her.

34. As a direct and proximate result of the wrongful death of Gail Belkin, Plaintiff Lawrence Belkin, as the husband and next of kin of Gail Belkin, and other family members suffered damages including pecuniary loss, mental anguish, emotional pain and suffering, and the loss of society, companionship, comfort, education, protection, care, personal advice, counsel, services, and guidance.

35. As a direct and proximate result of the wrongful death of Gail Belkin, her husband and next of kin Lawrence Belkin and her family have suffered damages including, but not limited to, the loss of the Decedent's earnings and the loss of services which they might have received from Decedent.

## COUNT III
### (Federal Common Law – Loss of Solatium)
### 28 U.S.C. § 1605A(c)

36. The facts alleged in Paragraph 1 through 35 are incorporated by reference as if fully alleged herein.

7

37. As the result of Defendants' willful, reckless, wrongful and intentional conduct which was funded and directed by Iran through its agents MOIS and IRGC, Plaintiff is seeking damages for the loss of his spouse's material services, love, affection, companionship, sexual relations, and other matters associated with their marital relationship.

## COUNT IV
### (Common Law of the District of Columbia – Intentional Infliction of Emotional Distress)

38. The facts alleged in Paragraph 1 through 37 are incorporated by reference as if fully alleged herein.

39. The Defendants' act of causing the detonation of a bomb laden with nails to cause maximum physical injury, disfigurement, pain, and suffering to Gail Belkin and the massive nature of the explosion (i) constitutes extreme and outrageous conduct; (ii) was undertaken with an intent to cause the victims, including Plaintiff Lawrence Belkin, Gail Belkin's husband, severe emotional distress; (iii) was directed at the Plaintiff as the immediate family member; and (iv) proximately resulted in the actual infliction of severe emotional distress on Plaintiff.

## COUNT IV-A
### (Federal Common Law – Intentional Infliction of Emotion Distress)
### 28 U.S.C. § 1605A(c)

40. The facts alleged in Paragraph 1 through 39 are incorporated by reference as if fully alleged herein.

41. The Defendants' act of causing the detonation of a bomb laden with nails to cause maximum physical injury, disfigurement, pain, and suffering to Gail Belkin and the massive nature of the explosion (i) constitutes extreme and outrageous conduct; (ii) was undertaken with an intent to cause the victims, including Plaintiff Lawrence Belkin, Gail Belkin's husband, severe emotional distress; (iii) was directed at the Plaintiff as the immediate family member; and (iv) proximately resulted in the actual infliction of severe emotional distress on Plaintiff.

## COUNT V
### (Wrongful Death – Article 64 Of The Torts Ordinance of Israel)

42. The facts alleged in Paragraph 1 through 41 are incorporated by reference as if fully alleged herein.

43. Article 64 of the Torts Ordinance of Israel ("Ordinance") provides a recovery for Plaintiff for an offense proscribed by the Ordinance, specifically the act(s) of willfully causing damage to a person.

44. The acts of the Defendants and of the PIJ which caused Gail Belkin to suffer pain and death in the most gruesome manner, and the proximately caused injuries which said conduct produced, constitute willfully caused damage to a person within the meaning of Article 64 of the Ordinance.

## COUNT VI
### (Statutory Cause Of Action – Breach Of Statutory Duty)

45. The facts alleged in Paragraph 1 through 44 are incorporated by reference as if fully alleged herein.

46. Section 63 of the Ordinance gives rise to a cause of action for violations of certain legislatively mandated duties under Israeli law.

47. The aforesaid acts of Defendants and of the PIJ constitute violations of various statutorily imposed obligations including, but not limited to, the following:

   a) the offense of aggravated assault within the meaning of Section 382 of Israel's Penal Code;

   b) the offense of assault against a helpless person within meaning of Section 368 C of Israel's Penal Code;

   c) the offense of causing aggravated intentional harm within the meaning of Section 329 of Israel's Penal Code;

9

    d)    the offense of murder within the meaning of Section 306 of Israel's Penal Code;

    e)    the offense of aiding a terrorist organization within the meaning of Section 99 of Israel's Penal Code; and

    f)    the offense of providing support to terrorist organization in violation of Section 2 of Israel's Terrorism Prevention Ordinance (1948).

## COUNT VII
### (Tort of Assault – Article 23 of the Torts Ordinance )

48. The facts alleged in Paragraph 1 through 47 are incorporated by reference as if fully alleged herein.

49. Article 23 of the Ordinance gives rise to a cause of action under Israeli law for assault.

50. The acts of Defendants and of the PIJ in physically mistreating and abusing Gail Belkin, while she was in a shopping mall and lacked any ability to defend herself against such acts, constitute aggravated assault under Article 23 of the Ordinance.

## COUNT VIII
### (Violation of Israel's Basic Law: Human Dignity And Freedom Under Article 63 of the Torts Ordinance)

51. The facts alleged in Paragraph 1 through 50 are incorporated by reference as if fully alleged herein.

52. Israel's statutory basic law mandating human dignity and freedom imposes a duty on Defendants to safeguard the dignity, freedom, and physical safety/integrity of Gail Belkin.

53. Defendants through their actions and the acts of the PIJ violated the said statutory duty which proximately caused injury and damages to Gail Belkin.

10

## COUNT IX
### (Violation of Israel's International Treaty Obligations)

54. The facts alleged in Paragraph 1 through 54 are incorporated by reference as if fully alleged herein.

55. A number of international treaties and/or the duties imposed thereunder have become, by virtue of Israel's execution and ratification thereof, part of the binding domestic law of Israel. These include duties and obligations under the following:

    a) The Treaty Against Torture and Cruel, Inhuman or Humiliating Punishments which was signed by Israel on October 22, 1966 and was ratified on April 8, 1991.

    b) Article 7 of the International Treaty Concerning the Rights of Citizens and States, which was signed by Israel on December 19, 1966 and was ratified on August 19, 1991.

    c) Articles 3 and 5 of the Universal Declaration of Human Rights of 1948.

56. The violations of these treaties and obligations, which are part of Israel's binding domestic law, are actionable as a matter of Israeli law.

57. The Defendants' acts constitute grave violations of the prohibitions and duties imposed by the aforesaid treaties and agreements.

## COUNT X
### (Violation of Customary International Law)

58. The facts alleged in Paragraph 1 through 57 are incorporated by reference as if fully alleged herein.

59. The acts of maiming, torturing, and killing innocent and defenseless women and children by human suicide bombers carrying powerful bombs laden with nails and shrapnel to inflict maximum painful injuries and death constitute violations of the peremptory or *jus cogens* norms of customary international law.

11

## **REQUESTS FOR RELIEF**

The Plaintiff requests this Court to grant the following relief:

1. As to Count I, Plaintiff Lawrence Belkin, in his capacity as [next of kin] [personal representative of the estate of Gail Belkin], demands judgment for (i) compensatory damages against the Defendants Iran, MOIS and IRGC, jointly and severally, in the amount of $10,000,000, plus prejudgment interest; (ii) punitive damages against Defendants MOIS and the IRGC in the sum of Three Hundred Million Dollars ($300,000,000.00); and (iii) the costs of this action.

2. As to Count II, Plaintiff Lawrence Belkin, as the personal representative of the estate of Gail Belkin, demands judgment for (i) compensatory damages against Defendants Iran, MOIS, and the IRGC, jointly and severally, in the amount of $10,000,000, plus prejudgment interest; (ii) punitive damages against Defendant MOIS and the IRGC in the sum of Three Hundred Million Dollars ($300,000,000.00); and (iii) the costs of this action.

3. As to Counts III and IV, Plaintiff Lawrence Belkin, in his personal capacity, demands judgment for compensatory damages in the total sum of $2,500,000, respectively; and the costs of this action.

4. As to Counts V through X, Plaintiff as the next of kin and personal representative of the estate of Gail Belkin demands judgment for (i) compensatory damages in the total sum of $10,000,000 against Defendants Iran, MOIS, and the IRGC, jointly and severally, plus prejudgment interest; (ii) punitive damages against Defendant MOIS in the sum of Three Hundred Million Dollars ($300,000,000.00); and (iii) the costs of this action.

5. To grant such other and further relief as this Court deems necessary and appropriate.

Dated: March 28, 2008

Respectfully submitted,

_____
Emil Hirsch (DC Bar No. 930479)
Paul L. Knight (DC Bar No. 911594)
O'Connor & Hannan, LLP
1666 K Street, N.W., Suite 500
Washington, D.C. 20006-2803
Telephone: (202) 887-1400
Facsimile: (202) 466-3215

*Attorneys for Plaintiff*

13